Seth W. Wiener, California State Bar Number 203747
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Telephone: (925) 487-5607
Email: seth@sethwienerlaw.com

Attorney for Plaintiff
Vitalii Blazheiev

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALII BLAZHEIEV,<br><br>              Plaintiff,<br><br>vs.<br><br>UBISOFT TORONTO INC.; UBISOFT, INC.; UBISOFT DIVERTISSEMENTS INC.; and DOES 1 through 10,<br><br>              Defendants. | Case No.: 3:17-cv-7160<br><br>**COMPLAINT** |

**OVERVIEW OF ACTION**

1.      This lawsuit is brought by Plaintiff Vitalii Blazheiev ("Plaintiff") against Defendants Ubisoft Toronto Inc., Ubisoft, Inc., Ubisoft Divertissements Inc., and Does 1 through 10 (collectively, Defendants"), based upon the Defendants' wrongful conduct toward Plaintiff and infringement of his intellectual property and right of publicity.

**PARTIES**

2.      Plaintiff Vitalii Blazheiev is an individual resident in the County of San Francisco, California.  Plaintiff is a celebrity in the entertainment and apps technology industries.  He is also a founder of two prominent successful companies: Essence Prototyping Company which is headquartered in Toronto, Canada; and Essence Cloud Inc. which is headquartered in San Francisco, California. Plaintiff has authored, published and copyrighted a #1 business software e-book entitled "iOS Venture Apps" which combines all know-hows and best practices of his years of experience in the business and creative software industries that he used while working with companies such as TD Bank, Royal Bank of Canada, Capco, SAP, and others, as a technical producer and a contractor.

3.      Defendant Ubisoft Toronto Inc. is a corporation incorporated under the laws of the

1  Province of Ontario, Canada, with its principal place of business in Toronto, Ontario.

2      4.    Defendant Ubisoft, Inc. ("Ubisoft") is a corporation incorporated under the laws of the
3  State of California, with its principal place of business in San Francisco, California.

4      5.    Defendant Ubisoft Divertissements Inc. is a corporation incorporated under the laws
5  of the Province of Quebec, Canada, with its principal place of business in Montreal, Quebec.

6      6.    The true names and capacities, whether individual, corporate, or otherwise of the
7  Defendants sued herein as Does 1 through 10 (the "Doe Defendants") are unknown to Plaintiff at this
8  time, and for that reason Plaintiff sues the Doe Defendants by fictitious names. Plaintiff will seek
9  leave to amend this Complaint to allege the true names and capacities of said Doe Defendants when
10 they have been ascertained.

11     7.    At all times mentioned, and unless otherwise stated, each of the Defendants was the
12 agent and/or employee of each and every co-Defendant, and in performing the things, acts, and/or
13 omissions, hereinafter more fully alleged, was acting within the scope and authority of said agency
14 and/or employment. Each of the Defendants herein authorized, ratified, knew about or should have
15 known about, and/or condoned the actions and omission of each and every other Defendant.

16 **JURISDICTION AND VENUE**

17     8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives
18 the district courts original jurisdiction over civil actions arising under the constitution, laws, or
19 treaties of the United States; and 28 U.S.C. § 1367, which gives the district courts jurisdiction over
20 supplemental state law claims.

21     9.    Venue is proper in this Court because the events that gave rise to this Complaint
22 occurred in this District and the parties reside here.

23 **FACTUAL ALLEGATIONS**

24     10.    In 2007, Plaintiff commenced working with Defendants.

25     11.    Plaintiff's first project for Defendants was working as an independent contractor on the
26 Blazing Angels 2 PC project. Under Plaintiff's leadership, over 100,000 units of the PC game sold
27 were sold and Defendants orally promised to pay dividends from the sales proceeds to Plaintiff.

28     12.    In 2008, Plaintiff began working for Defendants' Ukraine studio as an independent

COMPLAINT     2

contractor, and placed in charge of that office's studio business and development of products. The Ukraine studio was organized and created entirely upon Vitalii Blazheiev's authorship, ideas, and innovation, and was used by Defendants to obtain more clients, projects and sales.

13. In 2008, Plaintiff was appointed to lead Defendants' production team in their Romania and Paris offices. Defendants' Romania studio was the beneficiary of Plaintiff's services, and actually took a $1 million Euro investment intended for Defendants' Ukraine studio after Plaintiff's visit to Defendants' Paris office. Defendants' Romania studio was problematic.

14. In 2008, Defendants issued press releases about Plaintiff without his consent.

15. In 2008, Defendants moved Plaintiff to their Montreal studio to work on their Far Cry 3 project as a level 1 developer.

16. Plaintiff received excellent feedback from Defendants for his work on the Far Cry 3 project, and was promoted by Defendants in 2009 to a level 2 developer. In fact, plaintiff should have been classified as a level 5 developer as he was recognized as such by Defendants.

17. After promoting Plaintiff, Defendants made unfounded accusations that Plaintiff was "bizarre and strange" and had made "inappropriate" communications with Defendants' senior management team and various other employees of Defendants, such as Jade Raymond, Defendants' Managing Director, Yannis Mallat, Defendants' Chief Executive Officer, and Andre Hilson, formerly Defendants' Head Recruiter.

18. Defendants wrongfully terminated Plaintiff's employment on August 27, 2010.

19. After terminating Plaintiff's employment, Defendants continued to engage in harassing conduct toward Plaintiff and to make defamatory statements concerning Plaintiff.

20. After terminating Plaintiff's employment, Defendants used Plaintiff's likeness for their Far Cry games without Plaintiff's consent. On information and belief, Defendants intend to use Plaintiff's likeness for their Far Cry 5 game, which is scheduled to release on March 27, 2018.

21. After terminating Plaintiffs' employment, Defendants used Plaintiffs' trademarked name, Vitalii Blazheiev, to promote the sales of their products.

22. After terminating Plaintiff's employment, Defendants interfered with Plaintiff's prospective employment relationships with various companies, including but not limited to, Warner

1  Brothers Entertainment Inc., Electronic Arts, Inc., and Square Enix Holdings Co., Ltd.

2      23.    After terminating Plaintiff's employment, Defendants interfered with Plaintiff's
3  consulting agreement with a company named Compulsion Games Inc., and caused Compulsion Games
4  Inc. to terminate the consulting agreement.

5      24.    After terminating Plaintiff's employment, Defendants interfered with Plaintiff's
6  employment agreement with a company named Behavior Interactive Inc., and caused Behavior
7  Interactive Inc. to terminate the employment agreement.

8      25.    After terminating Plaintiff's employment, Defendants interfered with Plaintiff's
9  employment agreement with a company named Gap Inc., and caused Gap Inc. to terminate the
10  employment agreement.

11      26.    Ubisoft refused to stop interfering with Plaintiff's contractual and employment
12  relationships, and ignored communications from Plaintiff.

13      27.    On August 31, 2017, Plaintiff applied with the United States Copyright Office for a
14  copyright for his popular business software e-book entitled "iOS Venture Apps" which combines all
15  know-hows and best practices of his years of experience in the business and creative software
16  industries that he obtained from collaborative work with companies such as TD Bank, Royal Bank of
17  Canada, Capco, SAP, and others, as a technical producer and a contractor.

18      28.    Subsequent to Plaintiff's application to register "iOS Venture Apps," Defendants have
19  used the ebook in an attempt to fraudulently sell its own products.

20      29.    Defendants interfered with Plaintiff signing a contract concerning Sophia Stewart's
21  Matrix movie production, resulting in the delay of a contract between Plaintiff and Sophia Stewart.  As
22  a result, Plaintiff suffered lost revenue and suffered emotional distress.

## FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT

25      30.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as
26  though fully set forth herein.

27      31.    Defendants, without authorization, have used and are using Plaintiff's copyrighted
28  work in Defendants' attempt to fraudulently sell their goods.

32. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of, and indifferent to the rights of Plaintiff.

33. As a direct and proximate result of Defendants' infringement of Plaintiff's Copyrights and exclusive rights under the Copyright Act, Defendants are liable for maximum statutory damage pursuant to 17 U.S.C. § 504(c) up to $150,000 for each of the copyrights infringed, where such infringement took place on or after the effective date of registration of the Copyrights. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to his actual damages plus Defendants' profits from all infringements occurring on or after the effective date of registration of the Copyrights, as will be proven at trial.

34. Plaintiff is entitled to his actual damages plus Defendants' profits from all infringements occurring prior to the effective date of registration of Plaintiff's Copyrights, as will be proven at trial.

35. Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

36. Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause great and irreparable injury to Plaintiff that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrighted work.

## SECOND CAUSE OF ACTION

## UNAUTHORIZED USE OF PLAINTIFF'S NAME AND LIKENESS

37. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

38. Defendants knowingly used Plaintiff's name and likeness to sell their goods.

39. The use did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign.

40. Plaintiff did not consent to Defendants' use of his name and likeness.

41. Defendants' use of Plaintiff's name and likeness was directly connected to

Defendants' commercial purpose.

42. Plaintiff was harmed.

43. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION

## STALKING

44. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

45. Defendants have stalked Plaintiff, both online and offline. In furtherance of Defendants' efforts, Defendants have engaged in a pattern of conduct the intent of which is to follow, alarm or harass Plaintiff.

46. At all times herein, Defendants' stalking conduct caused Plaintiff to reasonably fear for his own safety and the safety of his family members.

47. Defendants have made numerous implied and express threats toward Plaintiff.

48. As a proximate result of the above-described intentional conduct, Plaintiff has suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

50. Defendants' conduct toward Plaintiff was outrageous.

51. Defendants intended for their conduct to cause Plaintiff emotional distress or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

52. Plaintiff suffered severe emotional distress, including depression and anxiety.

53. Defendants' conduct was a substantial factor in causing Plaintiff emotional distress.

54. Defendants' conduct was done with the intent to harm Plaintiff, and Plaintiff is entitled to recover punitive damages as a result of Defendants' oppressive, fraudulent, and malicious conduct.

## FIFTH CAUSE OF ACTION

## INDUCING BREACH OF CONTRACTS

55. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

56. There were contracts between Plaintiff and Compulsion Games Inc., Behavior Interactive Inc. and Gap Inc.

57. Defendants knew of the contracts.

58. Defendants intended to cause and Compulsion Games Inc., Behavior Interactive Inc. and Gap Inc. to breach the contracts.

59. Defendants' conduct caused and Compulsion Games Inc., Behavior Interactive Inc. and Gap Inc. to breach the contracts.

60. Plaintiff was harmed.

61. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## SIXTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

62. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

63. Plaintiff and Warner Brothers Entertainment Inc., Electronic Arts, Inc., Square Enix Holdings Co., Ltd. and Sophia Stewart, were in economic relationships that probably would have resulted in an economic benefit to Plaintiff.

64. Defendants knew of the relationships.

65. Defendants engaged in wrongful conduct, including making defamatory statements about Plaintiff.

66. By engaging in this conduct, Defendants intended to disrupt the relationships between Plaintiff and Warner Brothers Entertainment Inc., Electronic Arts, Inc., Square Enix Holdings Co., Ltd., and Sophia Stewart.

67. The relationships were disrupted.

68. Plaintiff was harmed.

69. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## SEVENTH CAUSE OF ACTION

## TRADEMARK INFRINGEMENT

70. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

71. Defendants, without authorization, have used and are using Plaintiff's trademarked name in connection with Defendants' attempt to fraudulently sell their goods.

72. Defendants' use of Plaintiff's trademarked name is in violation and derogation of Plaintiff's federal trademark rights and is likely to cause confusion, mistake, and deception among consumers and the public as to the source, origin, sponsorship or quality of Defendants' goods, thereby causing loss, damage, and injury to Plaintiff and the purchasing public.

73. As a result of Defendants' acts, Defendants are liable to Plaintiff under the Lanham Act § 43, 15 U.S.C. § 1114.

74. Defendants' wrongful and fraudulent acts have permitted or will permit them to profit from the strength of Plaintiff's advertising, sales and consumer recognition and trademarked name.

75. Defendants' conduct has been and is knowing, deliberate, willful, intended to cause mistake or to deceive, and in disregard of Plaintiff's rights in his trademarked name.

76. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been and will be deprived of the value of his trademarked name as a commercial asset.

77. In addition to other relief, Defendants' violation of Lanham Act § 32(1)(a) entitles Plaintiff to an award of three times the actual damages or profits of Defendants, whichever is greater, together with reasonable attorneys' fees, pursuant to Lanham Act § 35(b), 15 U.S.C. § 1117.

78. Defendants' acts irreparably harm Plaintiff's trademarked name and goodwill, and will continue to do so unless enjoined.  Plaintiff has no adequate remedy at law for Defendants' violations of Plaintiff's rights.

## EIGHTH CAUSE OF ACTION

## FEDERAL UNFAIR COMPETITION

79. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as

though fully set forth herein.

80. Defendants' use of Plaintiff's trademarked named constitutes a false designation of origin, a false or misleading descript of fact or a false or misleading representation of fact which is likely to cause confusion mistake or decent in violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a).

81. Defendants' acts, as complained of herein, have caused irreparable injury and damage to Plaintiffs, and, unless restrained, will continue to do so.

82. Plaintiff has no adequate remedy at law

83. Plaintiff has suffered and continue to suffer economic loss directly and proximately caused by Defendants' acts alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For compensatory, actual, and statutory damages in an amount to be proven at trial, but no less than $10,000,000;
2. For punitive damages;
3. For injunctive relief, including preliminarily and permanently enjoining Defendants, as well as the Defendants' officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with Defendants, from using Defendants' copyrights, trademark, or likeness in any advertisement, promotion, offer for sale, or sale of any goods or services;
4. For attorney's fees;
5. For costs of suit;
6. For pre-judgment and post-judgment interest;
7. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims so triable.

| | | |
|---|---|---|
| 1 | Dated: December 17, 2017 | LAW OFFICES OF SETH W. WIENER |

By: _____
Seth W. Wiener
Attorney for Plaintiff
Vitalii Blazheiev