UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALII BLAZHEIEV,<br><br>Plaintiff,<br><br>v.<br><br>UBISOFT TORONTO INC., et al.,<br><br>Defendants. | Case No. 17-cv-07160-EMC<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS; AND DENYING<br>DEFENDANTS' MOTION FOR<br>SANCTIONS**<br><br>Docket Nos. 38, 41 |

Plaintiff Vitalii Blazheiev, proceeding pro se, has filed suit against Defendants Ubisoft Toronto Inc.; Ubisoft Inc.; and Ubisoft Divertissements Inc. Plaintiff has asserted eight causes of action: (1) copyright infringement; (2) unauthorized use of name and likeness; (3) stalking; (4) intentional infliction of emotional distress; (5) inducing breach of contracts; (6) intentional interference with prospective economic relations; (7) trademark infringement; and (8) federal unfair competition. Currently pending before the Court are Defendants' motion to dismiss and motion for sanctions. *See* Fed. R. Civ. P. 12(b)(6), 11(c). The Court finds the motions suitable for disposition without oral argument. For the reasons discussed below, the motion to dismiss is **GRANTED** and the motion for sanctions is **DENIED**.

## I.     FACTUAL & PROCEDURAL BACKGROUND

In the operative first amended complaint ("FAC"), Plaintiff alleges as follows. Defendants are affiliated corporations that develop and/or publish video games. Ubisoft Toronto Inc. and Ubisoft Divertissements Inc. are Canadian corporations, each with a principal place of business in Canada (Toronto and Montreal, respectively). Ubisoft Inc. is a California corporation and has a principal place of business in San Francisco. *See* FAC ¶¶ 3-5.

According to Plaintiff, in 2007, he began working for Defendants as an independent

1  contractor.  *See* FAC ¶ 10.  During his employment with Defendants, Plaintiff worked as a

2  developer in Romania, Ukraine, and Canada.  *See* FAC ¶¶ 12-13, 15.  In 2010, Defendants

3  wrongfully terminated Plaintiff's employment.  *See* FAC ¶ 18.  After terminating the employment

4  relationship, Defendants harassed and made defamatory statements about Plaintiff.  *See* FAC ¶ 19.

5  In addition, Defendants engaged in other misconduct—*e.g.*, using his likeness in one of its video

6  games; using his trademarked name to promote the sales of its products; interfering with his

7  prospective and actual employment relationships with other companies; and using his popular

8  business software e-book (titled "iOS Venture Apps"), for which there is a pending copyright

9  application, to sell its products.  *See* FAC ¶¶ 20-22, 26-28.

10      In December 2017, Plaintiff—at the time represented by counsel—initiated the present

11  action.  In response, Defendants filed a motion to dismiss.  In conjunction with the motion,

12  Defendants submitted an attorney declaration, attached to which were, *inter alia*, two dispositions

13  from the Ontario Review Board ("ORB") that concerned Plaintiff.  Per the ORB website, the ORB

14      has jurisdiction over individuals who have been found by a court to
15      be either unfit to stand trial or not criminally responsible on account
        of mental disorder.  The Board is an independent tribunal
16      established pursuant to the Criminal Code of Canada which
        stipulates that each province and territory must establish or
17      designate a Review Board to oversee these individuals.

18  http://www.orb.on.ca/scripts/en/about.asp (last visited June 5, 2018).[1]

19      The two dispositions regarding Plaintiff discussed issues related to his mental health.  In

20  the first disposition dated July 2017, the ORB noted that, three years earlier, Mr. Blazheiev was

21  found not criminally responsible on a charge of criminal harassment due to a mental disorder.  The

22  disorder appears to have been "Psychotic Disorder NOS and Narcissistic Personality Traits."

23  Docket No. 24 (Marriott Decl., Ex. A) (ORB Dispos. at 4) (reflecting that Plaintiff was diagnosed

24

25  [1] Under Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to
    reasonable dispute because it . . . can be accurately and readily determined from sources whose
26  accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  *See, e.g.*, *Karkanen v.
    Family Court Servs.*, No. 17-cv-00999-HSG, 2017 U.S. Dist. LEXIS 98620, at *1 n.2 (N.D. Cal.
27  June 26, 2017) ("tak[ing] sua sponte judicial notice of information on the Superior Court's FCS
    [Family Court Serrvces] webpage."); *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670
28  SBA, 2008 U.S. Dist. LEXIS 69542, at *17 (N.D. Cal. Sep. 8, 2008) (noting that courts have often
    treated government agency websites as "proper subjects for judicial notice"; citing cases).

with such).  The ORB concluded—largely based on evidence of continual harassment of a Ubisoft employee—that Mr. Blazheiev "continue[d] to represent a significant threat to the safety of the public" such that "an absolute discharge [was] not available to him."  Docket No. 24 (Marriott Decl., Ex. A) (ORB Dispos. at 8).  Mr. Blazheiev was to remain subject to a conditional discharge—*e.g.*, "Mr. Blazheiev should report not less than once every two weeks, have no contact with Ubisoft employees except through legal counsel," and consent to treatment (including taking prescribed medication).  Docket No. 24 (Marriott Decl., Ex. A) (ORB Dispos. at 8).

The second disposition was dated November 2017.  Here, the ORB ordered Mr. Blazheiev to be detained at the General Forensic Unit of the Centre for Addiction and Mental Health, Toronto.  The Centre, according to the disposition, was to create a program for his detention in custody and rehabilitation.  *See* Docket No. 24 (Marriott Decl., Ex. B) (ORB Dispo. at 1).  The ORB also ordered that Mr. Blazheiev, *inter alia*, "refrain from contact with Ubisoft employees, except through legal counsel."  Docket No. 24 (Marriott Decl., Ex. B) (ORB Dispo. at 2).

Shortly after Defendants filed their motion to dismiss, Plaintiff's attorney filed a motion to withdraw.  *See* Docket No. 26 (motion).  Among other things, counsel raised concerns over Plaintiff's mental health and stated "based on Plaintiff's failure to provide evidentiary support for his claims," and "the findings of the Ontario Review Board which were provided to [counsel] only after the lawsuit was filed," that Plaintiff was "maintaining this action without probable cause and for the purpose of harassing Defendants."  Docket No. 26 (Mot. at 2).  The motion to withdraw was granted, *see* Docket No. 51 (order), and Plaintiff has proceeded pro se since then.

In the meantime, Plaintiff filed a FAC.  Defendants have now moved to dismiss the FAC and have also moved for sanctions.  Subsequently, Plaintiff filed a proposed order for a preliminary injunction.  Both of Defendants' motions, as well as Plaintiff's proposed order, are pending before the Court.

## II.     DISCUSSION

A.     Motion to Dismiss

Defendants argue that (1) the two Canadian Ubisoft entities should be dismissed for lack of personal jurisdiction and that (2) all claims for relief—asserted against all Defendants—should be

dismissed for failure to state a claim.  The Court addresses each argument in turn.

  1.  Personal Jurisdiction

Under Federal Rule of Civil Procedure Rule 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  Here, the two Canadian Ubisoft entities have made such a motion.  Canadian Defendants argue that this Court—based in California—lacks personal jurisdiction over them because they are not residents of California and they do not have the requisite "minimum contacts" with California such that maintenance of the suit against them would offend traditional notions of fair place and substantial justice.  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (stating that, "[f]or a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice"'").[2]

Although the Canadian companies are moving to dismiss for lack of personal jurisdiction, it is Plaintiff's burden to establish that jurisdiction is proper.  *See id.*  At this juncture in the proceedings, Plaintiff need only establish a prima facie case of personal jurisdiction.  *Cf. Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (stating that, "[i]f the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss"); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (noting that a court considers a plaintiff's pleadings and affidavits in assessing whether there is a prima facie showing of personal jurisdiction; "[a]lthough the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor").

---

[2] "Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits.  California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."  *Mavrix*, 647 F.3d at 1223.

4

1  Although this is not a significant burden, Plaintiff has failed to meet it nonetheless.  Even liberally

2  construing Plaintiff's operative complaint, the Court finds no basis for personal jurisdiction.

3       There are two types of personal jurisdiction: general and specific.  General jurisdiction is

4  established when a party's "affiliations with the state are so 'continuous and systematic' as to

5  render them essentially at home in the forum state."  *Goodyear Dunlop Tires Operations, S.A. v.*

6  *Brown*, 564 U.S. 915, 919 (2011).  General jurisdiction imposes a high standard, requiring

7  affiliations with a forum state that approximates physical presence.  *See Helicopteros Nacionales*

8  *de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *see also Schwarzenegger*, 374 F.3d at 801

9  (noting that general jurisdiction is an exacting standard because "a finding of general jurisdiction

10  permits a defendant to be haled into court in the forum state to answer for any of its activities

11  anywhere in the world").  The paradigm forum for the exercise of general jurisdiction over a

12  corporation is its "place of incorporation and principal place of business."  *Daimler AG v.*

13  *Bauman*, 571 U.S. 117, 137 (2014).

14       Plaintiff acknowledges that both Ubisoft Toronto Inc. and Ubisoft Divertissements Inc.

15  were incorporated in Canada, and that their principal places of business are in Toronto and

16  Montreal, respectively.  *See* FAC ¶¶ 3, 5.  Thus, to establish general jurisdiction over these foreign

17  Defendants, Plaintiff must establish that Defendants are affiliated with California in a manner so

18  "continuous and systematic" as to "render them essentially at home."  *Goodyear*, 564 U.S. at 919.

19  Plaintiff has not done so.  Plaintiff has not provided details regarding *any* affiliations that Ubisoft

20  Toronto Inc. or Ubisoft Divertissements might have with California.  Plaintiff has therefore failed

21  to establish that the Canadian companies are subject to general jurisdiction in California.

22       As for specific jurisdiction, the Ninth Circuit has established a three-prong test.

23      (1) The non-resident defendant must purposefully direct his
   activities or consummate some transaction with the forum or
24      resident thereof; or perform some act by which he purposefully
   avails himself of the privilege of conducting activities in the
25      forum, thereby invoking the benefits and protections of its laws;

26      (2) the claim must be one which arises out of or relates to the
   defendant's forum-related activities; and
27

28      (3) the exercise of jurisdiction must comport with fair play and
   substantial justice, i.e. it must be reasonable.

United States District Court
Northern District of California

> The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

Plaintiff's assertion of personal jurisdiction does not satisfy the first prong. The first prong of specific jurisdiction refers to both purposeful direction and purposeful availment. *Id.* "A purposeful availment analysis is most often used in suits sounding in contract" while a purposeful direction analysis "is most often used in suits sounding in tort." *Id.* In the present case, since all of Plaintiff's claims (including that for inducement of breach of contract) sound in tort, the Court considers whether Plaintiff has made a prima facie case of purposeful direction. Purposeful direction exists where a defendant has allegedly has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows or is likely to be suffered in the forum state." *Id.* at 803 (internal quotation marks omitted).

While Plaintiff has alleged that Defendants have committed intentional acts, he has not established the second and third elements of purposeful direction—*i.e.*, that the Canadian companies expressly aimed their activities at California, the forum state, causing harm that the Canadian companies knew or was likely to be suffered in California. Nowhere in his complaint does Plaintiff specify what actions that the Canadian companies took that were directed at California.

In his opposition, Plaintiff maintains that he "decided not to file this lawsuit in Canada, since 80% of Ubisoft business, operations and sales are in USA." Opp'n at 2. Contact with the United States, however, is not the same thing as contact with California. And even if it were appropriate to consider contacts with the United States, *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158-59 (9th Cir. 2006) (explaining that Federal Rule of Civil Procedure 4(k)(2) "is commonly referred to as the federal long-arm statute" because it allows a plaintiff "to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum" in certain circumstances), it is not clear from Plaintiff's statement whether he means that

6

the Canadian Ubisoft entities *in particular* have a significant presence in the United States or *all* Ubisoft companies collectively have such a presence. If the latter, it is not clear that the contacts of all Ubisoft entities may be attributed to the Canadian Ubisoft entities. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (noting that "the existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction"). The Court also notes that there is no evidence to support Plaintiff's statement.

To the extent Plaintiff suggests there is personal jurisdiction over the Canadian entities for intentionally engaging in wrongful conduct against him—both as a California resident and owner of a California company, *see* FAC ¶ 2; Opp'n at 2—this theory is not viable in light of *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). In *Walden*, the defendant was a DEA agent who seized $97,000 in cash from the plaintiffs while they were at an airport in Atlanta, Georgia. *See id*. at 1119. The plaintiffs were citizens of Nevada. *See id*. The plaintiffs filed a lawsuit against the defendant in the District of Nevada, asserting a violation of their constitutional rights. *See id*. at 1120. The defendant argued that the Nevada federal court lacked personal jurisdiction over him, and the Supreme Court agreed on grounds that the defendant had not taken any action expressly targeting the state of Nevada. *See id*. at 1121.

The Court noted that all of the defendant's actions—approaching, questioning, and searching the plaintiffs—occurred in Georgia. *See id*. at 1124. The defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id*. The fact that the defendant might have known that plaintiffs would suffer foreseeable harm in Nevada, where they lived, was not enough to establish minimum contacts. *See id*. As the Court explained, "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 1122. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by

interacting with other persons affiliated with the State." *Id.* at 1123. "[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* at 1122.

In *Morrill v. Scott Financial Corp.*, 873 F.3d 1136 (9th Cir. 2017), the Ninth Circuit relied on *Walden* in finding that the federal court in Arizona did not have personal jurisdiction over defendants, who were Nevada residents. *See id.* at 1145. The plaintiffs and defendants were opposing counsel in a separate litigation in Nevada. *Id.* at 1139. During the course of this separate litigation, plaintiffs alleged that defendants engaged in "abuse of process and wrongful institution of civil proceedings," consisting of defendants initiating a companion civil proceeding in Arizona to depose plaintiffs, filing suit for defamation against plaintiffs in a Nevada court, and filing a grievance with the Nevada State Bar alleging that plaintiffs had acted "unethically and unprofessionally." *Id.* at 1140-41. Such acts, according to plaintiffs, led their clients to hire new counsel. *See id.*

The Ninth Circuit, however, held that the Arizona court did not have personal jurisdiction over defendants. *See id.* at 1145. The defendants' actions, according to the court, were not "expressly aimed" at Arizona, the forum state. *See id.* at 1146. While the court acknowledged that the defendants had more contact with the forum state than the defendant in *Walden*—*e.g.*, a defendant had traveled to Arizona and had sent materials to Arizona—such contacts were to be understood within the framework of the "ongoing litigation in Nevada." *Id.* at 1145. The defendants' actions were not a "separate cause of action in which substantive claims were presented," but rather "component parts" of the separate and ongoing litigation in Nevada. *Id.* at 1149. "The primary effects of Defendants' actions, including the alleged harm, were tied directly to the litigation in Nevada." *Id.* at 1145. The fact that plaintiffs felt the harm in Arizona, the forum state, was immaterial. Similar to *Walden*, the forum state was only "implicated by the happenstance of Plaintiffs' residence" and did not establish contact on the part of defendants that creates a "substantial connection with the forum State." *Id.* at 1146.

Accordingly, to the extent Plaintiff asserts personal jurisdiction over the Canadian Ubisoft entities because Plaintiff and his company are based in California, such a claim—on its own—is

8

not enough. Pursuant to *Walden* and *Morrill*, this "impermissibly allow[s] a *plaintiff's* contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 134 S. Ct. at 1124-25 (emphasis added). *Walden* as well as *Morrill* make clear that it is the *defendant's* own contacts with the forum—not knowledge of a plaintiff's connection to a forum—that establishes personal jurisdiction.

The Court therefore grants the Canadian Ubisoft companies' motion to dismiss for lack of personal jurisdiction. That being said, the Court shall dismiss without prejudice and give Plaintiff leave to amend because, at this juncture, it is not clear that a claim against the Canadian companies would be futile—*i.e.*, that it would not be possible for this Court to have personal jurisdiction over them. For example, Plaintiff has asserted claims for intentional interference with contract and prospective economic relationships, either of which might give rise to specific jurisdiction. Such claims would be dependent, however, on what the specific acts of interference were. (As discussed below, the complaint as currently pled only alleges in conclusory fashion that there was interference without identifying what the specific acts of interference were.) *Compare, e.g.*, *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) (finding that personal jurisdiction was not proper since the defendant, in allegedly inducing a breach of contract, did not enter California or contact any person in California, and the defendant's alleged acts had nothing to do with California itself), *with Tresona Multimedia LLC v. Legg*, No. CV-14-02141-PHX-DGC, 2015 WL 470228 (D. Ariz. Feb. 4, 2015) (finding that the out-of-state defendant, in personally reaching out to contracting parties and publicly engaging in false advertising in Arizona committed acts that were "intended to undermine" plaintiff's business, thereby making sufficient contacts with the forum state such that personal jurisdiction for inducing a breach of contract was proper); and *Power Integrations, Inc. v. Chan-Woong Park*, No. 16-CV-02367-BLF, 2017 WL 733224, at *6 (N.D. Cal. Feb. 24, 2017) (finding that the defendant, in interfering with plaintiff's contractual relationships by filing for a patent based on plaintiff's proprietary information, repeatedly reaching out to plaintiff in California through phone calls, emails, and written correspondences to sell back plaintiff's own technology, and contacting plaintiff's customers about possible legal disputes if they exported their products to California with plaintiff's technology, had made sufficient contacts

9

with California such that personal jurisdiction was proper). *See also Walden*, 134 S. Ct. at 1123-24 (discussing *Calder v. Jones*, 465 U.S. 783 (1984), the crux of which was that "the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff").

The Court cautions Plaintiff that, if he does file an amended complaint with new factual allegations regarding what specific acts the Canadian Ubisoft companies took vis-à-vis California (other than harming a resident of California), he cannot "lump" the two defendant companies together. *Cf. In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) (finding that "[p]laintiffs' failure to allege what role each Defendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations"); *see also Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (noting that "a plaintiff's allegations must 'provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them,' including "what conduct is at issue"). That is, Plaintiff must specifically identify what acts *each* Canadian company took that were expressly aimed at California.

### 2. Failure to State a Claim for Relief

#### a. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss on the basis that the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In stating the "grounds of his entitlement," a plaintiff must provide more than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* A plaintiff's complaint must contain "sufficient factual matter" that, when "accepted as true," states a claim to relief that is "plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility is established when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement' but it asks for more than sheer probability that a defendant has acted unlawfully." *Id.*

In the motion to dismiss, Defendants argue that Plaintiff has failed to state a claim for relief for all eight causes of action asserted. In his opposition, Plaintiff fails to address any of the Defendants' substantive arguments. Nonetheless, in the interest of justice—and in light of the fact that Defendants are moving for sanctions—the Court addresses each claim below. The Court notes that, although it has dismissed the two Canadian Ubisoft entities on personal jurisdiction grounds, it addresses the 12(b)(6) motion for *all* Defendants—including the Canadian companies—as the Court has given Plaintiff leave to amend above.

### b. Copyright Infringement

Copyright protection covers "original works of authorship fixed in any tangible medium of expression." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984). "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co.*, *Inc.*, 499 U.S. 340, 361 (1991).

For purposes of the pending motion, the Court assumes that Plaintiff has adequately alleged ownership of a valid copyright. Plaintiff has alleged that he applied to register a copyright for his book "iOS Venture Apps," *see* FAC ¶ 27, and the Ninth Circuit has held that copyright protection can extend to those copyrights that are pending. *See Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 619 (9th Cir. 2010). This "application approach," the court found, would avoid "unnecessary delay in copyright infringement litigation" and prevent an "infringing party to profit from its wrongful acts." *Id.* It would also make "little sense," the court added, to dismiss a case solely due to the fact that the U.S. Copyright Office has "not made a prompt decision," which effectively has no "substantive impact" on whether a litigant proceeds with the suit.[3] *Id.* at 621.

---

[3] The Court notes that Plaintiff submitted evidence indicating that the U.S. Copyright Office initially had concerns about what Plaintiff was seeking to copyright and whether such content was copyrightable in the first place. *See* Docket No. 31-1, at 8 (exhibit attached to FAC) (email to Plaintiff from U.S. Copyright Office, dated November 9, 2017) (stating that "we need to clarify the extent of the claim," that "the deposit copy we are able to view does not contain the necessary source code to register a computer program" and "also does not contain any copyrightable artwork"; adding that, "[u]sing the deposit material we are able to view, I can amend the application and complete a registration based on the authorship of 'text, photographs'").

However, even if Plaintiff has adequately alleged ownership of a valid copyright, he has not adequately shown that Defendants infringed this copyrighted information.  Plaintiff alleges that Defendants willfully used Plaintiff's copyrighted work in "fraudulently selling their goods." FAC ¶¶ 31-32.  Defendants' use, according to Plaintiff, was without authorization and therefore renders them liable for damages.  But absent from Plaintiff's allegations is the "factual content" that *Twombly* and *Iqbal* require.  Plaintiff lacks details regarding *which* elements of the original work were copied and *how* such elements were copied.  Merely positing that Defendants have "used and are using Plaintiff's copyrighted work," FAC ¶ 31, is a conclusory statement that does not rise to the level of "facial plausibility."  The Court therefore grants the motion to dismiss the copyright claim with leave to amend.

c.     Unauthorized Use of Plaintiff's Name and Likeness

In the motion to dismiss, Defendants proceed with the assumption that Plaintiff's claim for unauthorized use of his name and likeness is predicated on California law.  Because Plaintiff does not argue otherwise in his opposition, the Court applies California law.[4]

California law recognizes the right of privacy to protect one's "name and likeness against appropriation by others for their advantage."  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).  Under California Civil Code § 3344, the plaintiff must show "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Id*.  In addition, the plaintiff must also show a "knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose."  *Id*.  "California's appropriation statute is not limited to celebrity plaintiffs."  *See KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 367 (2000) (noting that, while the "unauthorized appropriation of an obscure plaintiff's name

---

However, in a recent filing, Plaintiff provided evidence of an email from the U.S. Copyright Office indicating that something with respect to iOS Venture Apps was copyrighted.  *See* Docket No. 62-2 (exhibit attached to proposed order) (email to Plaintiff's representative from U.S. Copyright Office, dated June 15, 2018) (stating that "I have amended and approved your application [and] [y]ou can expect your certificate of registration to arrive within 4-6 weeks").

[4] The Court adopts the same approach for all state law claims pled by Plaintiff.

[. . .] would not inflict as great an economic injury," California's appropriation statute is "not limited to celebrity plaintiffs"); *see also Miller v. Collectors Universe, Inc.,* 159 Cal. App. 4th 988, 1002, 1006 (2008) (finding that by enacting section 3344(a)—specifically the provision for minimum statutory damages—the Legislature provided a "practical remedy" for a "non-celebrity plaintiff whose damages are difficult to prove and who suffers primarily mental harm from the commercial misappropriation of his or her name").

In the instant case, Plaintiff has alleged that Defendants improperly used his name and likeness—in particular, to promote the Far Cry games. *See* FAC ¶ 20. Plaintiff's complaint, however, does not specify *how* Defendants used Plaintiff's name and likeness. For example, was Plaintiff's name listed as a developer for the Far Cry games, or was Plaintiff identified as a person who endorsed the games? Was Plaintiff's likeness used for a character in the Far Cry games? Plaintiff's complaint provides no guidance and thus leaves Defendants without fair notice regarding what the factual allegations are underlying the claim.[5] Accordingly, the claim for unauthorized use of name and likeness is also dismissed with leave to amend.

### d.    Stalking

Under California Civil Code § 1708.7, a plaintiff must satisfy three elements to establish stalking. First, a plaintiff must show that the defendant was engaged in a pattern of conduct with "the intent to follow, alarm, or harass the plaintiff." Cal. Civ. Code § 1708.7. Second, a plaintiff must show that, as a result of the defendant's conduct, the plaintiff "reasonably feared for his or her safety, or the safety of an immediate family member." *Id.* Alternatively, a plaintiff may plead that she suffered "substantial emotional distress," which a reasonable person would also have suffered given the defendant's pattern of conduct. *Id.* Third, a plaintiff must show that the defendant made a credible threat intending to place plaintiff in "reasonable fear for his or her own safety," and that the defendant persisted despite the fact that on at least one occasion, plaintiff made clear that the "defendant cease and abate his or her pattern of conduct." *Id.*

---

[5] Since Plaintiff has not alleged *when* or *how* his name and likeness was used—*i.e.*, when the Far Cry games in which his name and likeness were used were released—the Court does not have enough factual allegations to evaluate Defendants' argument that Plaintiff's claim is barred due to the statute of limitations.

In his complaint, Plaintiff alleges that Defendants stalked him both online and offline such that he reasonably fears for his safety and that of his family members. *See* FAC ¶¶ 45-46. Plaintiff also alleges that Defendants "continued to engage in harassing conduct" and made defamatory statements. *See* FAC ¶ 19.

The problem with Plaintiff's stalking claim, as pled, is that Plaintiff does not provide details regarding Defendants actions, *i.e.*, *how* Defendants had stalked him. Without factual support, Plaintiff's allegation of stalking is only conclusory and does not rise to plausible, let alone probable. The same is true with respect to Plaintiff's allegations of defamatory statements. No examples have been provided regarding the specific statements that Defendants purportedly made.

To the extent that Plaintiff's stalking claim is based on the Ubisoft emails he attached to his opposition brief, *see* Docket Nos. 58-8; 58-9,[6] the Court finds, as a matter of law, that Plaintiff has failed to state a claim for relief. Plaintiff alleges that the Ubisoft emails were sent to him after his termination—and after he notified Defendants to sever all communications. *See* Docket No. 59 (Opp'n at 7). While the sending of emails to Plaintiff after his termination might have been negligent on the part of Defendants, there is no indication that Defendants *knowingly or willfully* sent the emails to harass Plaintiff. *See* Cal. Civ. Code § 1708.7 (stating that plaintiff must show that the defendant was engaged in a pattern of conduct with the *intent* to "follow, alarm, or harass the plaintiff") (emphasis added); *see, e.g.*, *Madsen v. Buffum*, No. ED1201605MWFSPX, 2013 WL 12139139, at *1 (C.D. Cal. July 17, 2013) (finding that the defendants' set up of a website named after plaintiffs' last names—Madsen and Coker—("www.stopmadsencoker.com"), and use of email communications to monitor plaintiffs' business activities was enough to infer defendants had acted with the intent to harass).

Furthermore, even if these emails were sent intentionally, Plaintiff would have the burden of showing that the emails were a "credible threat"—the third element in the tort of stalking—such that Plaintiff would be in "reasonable fear" for his own safety or that of his family members.

---

[6] While the "scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint," *see Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), the Court considers this evidence in evaluating whether Plaintiff should be given to leave to amend.

"Credible threat" as defined in California Civil Code § 1708.7 refers to any "verbal or written threat" that is made with "the intent and apparent ability to carry out the threat." Cal. Civ. Code § 1708.7 (West). The content of the emails, however, does not establish a credible threat. The emails seem to be for promotional purposes—specifically for video games that were pending release. On its face, nothing in these emails suggests a "credible threat" of Plaintiff as defined in California Civil Code § 1708.7. The stalking claims lack plausibility. The Court notes, as discussed below, that Plaintiff has previously pursued harassment claims against Defendants without success. The Court therefore grants the motion to dismiss the stalking claim without leave to amend.

e.   Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress ("IIED") is comprised of the following elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*.

In the instant case, Plaintiff fails to specify in his complaint the "conduct" that he alleges is "outrageous." Without identifying a specific act, it is not possible to determine whether Defendants exceeded "all bounds of that usually tolerated in a civilized community." Merely labeling conduct as outrageous—without factual backing—is not enough.[7]  Plaintiff has not demonstrated he can successfully amend his complaint to state a plausible claim. Accordingly, the claim for IIED is dismissed without leave to amend.

f.   Inducing Breach of Contracts

To state a cause of action for intentional interference with contractual relations, the

---

[7] Similar to above, because Plaintiff has not identified the specific acts that are allegedly outrageous, the Court cannot evaluate Defendants' argument that the IIED claim is barred due to the statute of limitations.

plaintiff must show "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co*. 791 P.2d 587, 589 (Cal. 1990).

In the instant case, Plaintiff alleges that he was in contract with Compulsion Games, Inc., Behavior Interactive, Inc., and Gap, Inc. FAC ¶ 56. Plaintiff further alleges that Defendants knew about the contracts and intended to cause—and indeed caused—each of these three companies to breach. FAC ¶¶ 57-59.

Like the allegations in support of the claims discussed above, Plaintiff's allegations here are conclusory. Plaintiff merely asserts that Defendants "knew of the contracts," FAC ¶ 57, but does not posit any facts to support such allegation. Furthermore, with respect to the third element, Plaintiff fails to describe Defendants' actions. Without such information, it is impossible to know *what* Defendants had done and whether such acts were "designed" to induce a breach of the contractual relationship. Merely asserting that Defendants intended to do so—without any support—does not meet the *Twombly* and *Iqbal* standard. The Court grants the motion to dismiss the inducement claim with leave to amend.

g.     Intentional Interference with Prospective Economic Relations

The tort of intentional interference with prospective economic advantage is comprised of the following elements: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp*. 63 P.3d 937, 950 (Cal. 2003). In addition to these elements, the plaintiff must show that the defendant's conduct was "wrongful by some legal measure other than the fact of interference itself." *Id*.

Plaintiff alleges that he was in an "economic relationship" with Warner Brothers

Entertainment, Inc., Electronic Arts, Inc., Square Enix Holdings Co., Ltd., and Sophia Stewart. Plaintiff alleges that Defendants knew of such relationships and engaged in wrongful conduct such as making defamatory statements that were intended to disrupt—and indeed disrupted—the relationship between Plaintiff and each of the named entities. *See* FAC ¶¶ 63-68.

Plaintiff has not provided details regarding the economic relationships between himself and the named parties. But even if the Court were to presume the relationships to be true, Plaintiff has not pled sufficient facts to show that Defendants *knew* of such relationships—the second element of intentional interference with prospective economic advantage. Plaintiff has only made a conclusory statement in positing that "Defendants knew of the relationships," FAC ¶ 64, without any factual allegations in support.

With respect to the third element, Plaintiff does not specify *what kinds* of intentional acts Defendants committed that were designed to disrupt his economic relationships. Plaintiff merely asserts that Defendants engaged in "wrongful conduct" such as making defamatory statements. While the act of defamation may disrupt possible economic ties, it remains unclear *what* defamatory statements were made, or what kinds of wrongful conduct Defendants otherwise committed, or how those statements disrupted those economic ties. Without this information, Plaintiff has not met the plausibility standard. The Court grants the motion to dismiss the interference claim with leave to amend.

### h.    Trademark Infringement

To prevail on a trademark infringement claim, the plaintiff must show "(1) a valid, protectable trademark, and (2) that . . . use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBAY, Inc*. 511 F.3d 966, 969 (9th Cir. 2007). The plaintiff must clearly establish a "valid, protectable interest" *before* arguing the second element of a trademark infringement claim noted above. *Id.*

In the case at bar, Plaintiff alleges that Defendants knowingly used his trademarked name to "fraudulently sell their goods." FAC ¶ 71. Plaintiff alleges that such use could cause consumers "confusion, mistake, and deception," and that Defendants therefore violated 15 U.S.C. § 1114. FAC ¶¶ 72-73.

United States District Court
Northern District of California

As an initial matter, the Court notes that Plaintiff's allegation that Defendants used Plaintiff's trademarked name *presumes* ownership of a trademark. Without proof of registration on the Principal Register in the Patent and Trademark Office, however, Plaintiff must "establish his right to exclusive use in a common law infringement action." *Applied Info. Scis. Corp*, 511 F.3d at 970. Plaintiff may establish this right by proving that "the mark is not generic" and that "no one else had first used it in commerce." *Id*. While Plaintiff has established neither, the Court assumes, for purposes of this opinion, that use of his name meets these standards.[8] Presumably, Plaintiff's name is unique, and as such, there is no reason to infer that his name has already been used in commerce. In any event, however, Plaintiff has not raised any facts regarding *how* Defendants used his trademarked name. Plaintiff's statement that "Defendants, without authorization, are using Plaintiff's trademarked name," FAC ¶ 71, is a conclusory statement that is devoid of any factual support. The Court grants the motion to dismiss the trademark claim with leave to amend.

i. <u>Federal Unfair Competition</u>

Similar to trademarks, unfair competition seeks to protect one's distinctive mark or name from another's use and prevent "likelihood of confusion or deception as to the origin of goods." *New W. Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979). Liability for federal unfair competition under 15 U.S.C. § 1125 can be established if the plaintiff shows that the defendant used any "word, term, name, symbol, or device" in connection with commerce, which in turn could cause confusion or mistake regarding the "origin, sponsorship, or approval" of the goods in question. While a claim for federal unfair competition does not require a registered trademark, "the 'ultimate test' for unfair competition is the same as for trademark infringement: 'whether the public is likely to be deceived or consumed by the similarity of the marks.'" *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

In the instant case, Plaintiff's federal unfair competition claim is effectively a trademark

---

[8] Plaintiff can have an enforceable trademark without registration. *See Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017). Without registration, Plaintiff bears the burden of proving the trademark's validity. *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,* 419 F.3d 925, 928 (9th Cir. 2005).

infringement claim. That is, he alleges Defendants used Plaintiff's trademarked name, which constitutes a "false designation of origin" and is likely to cause "confusion or mistake" in violation of 15 U.S.C. § 1125. FAC ¶ 80. As discussed above with respect to the trademark infringement claim, Plaintiff has not provided any evidence of ownership of a valid trademark. Furthermore, even if he had, Plaintiff has not pled specific facts regarding *how* Defendants used any "word, term, name, symbol, or device" in connection with commerce. Furthermore, even if he had, Plaintiff has not alleged *how* the use of his trademarked name in the sale of Defendants' products would cause confusion or mistake with respect to the "origin, sponsorship, or approval" of the goods in question. Based on Plaintiff's current complaint, there is insufficient factual support to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. As such, the Court grants the motion to dismiss the claim for federal unfair competition with leave to amend.

### j. Summary

For the foregoing reasons, the Court dismisses all of Plaintiff's claims. While the Court has serious concerns regarding the viability of Plaintiff's allegations, the Court will dismiss most claims as indicated above without prejudice because it is not clear at this juncture in the proceedings that amendment would be futile. The claims of stalking and intentional infliction of emotional distress are, however, dismissed with prejudice. While the Court is thus giving Plaintiff leave to amend certain claims to correct the deficiencies identified above, it emphasizes that, in any amendment, Plaintiffs may not "lump" the Ubisoft entities together. Rather, Plaintiff must explain what specific misconduct each Ubisoft entity allegedly took.

### B. Motion for Sanctions

In addition to moving for dismissal of Plaintiff's complaint, Defendants have moved for sanctions against Plaintiff. Specifically, Defendants ask for "fees and costs associated with defending this lawsuit" and for a declaration of Plaintiff as a vexatious litigant. Doc. No. 38 (Mot. at 9-10).

The Court denies the motion for sanctions for several reasons. First, at this juncture in the proceedings, the Court cannot say that Plaintiff's claims are frivolous or futile, as reflected by the

19

fact that it is permitting Plaintiff to amend to correct the deficiencies in this complaint. Second,

the sanctions sought by Defendants seem excessive in light of the fact that (1) Plaintiff is

proceeding pro se, *see Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (noting that "the

court must take into account a plaintiff's *pro se* status when it determines whether the filing was

reasonable); *Parkview Edge Properties, LLC v. Dumlao*, No. C 14-4899 PJH, 2014 WL 6808625,

at *4 (N.D. Cal. Dec. 2, 2014) (finding that monetary sanctions against the defendant was not

appropriate given the defendant's *pro se* status and because it was unclear whether the defendant

even knew he could be sanctioned thousands of dollars); *Silvas v. GMAC Mortg., LLC*, No. CV-

09-265-PHX-GMS, 2009 WL 4573234, at *13 (D. Ariz. Dec. 1, 2009) (declining to award

monetary sanctions even if Rule 11(b) was violated because the court is "especially reluctant to

sanction pro se litigants if less drastic alternatives exist"), and that (2) the ORB, a Canadian

governmental agency, has indicated that Plaintiff suffers from a psychotic disorder.

This is not to say that the Court is unsympathetic to Defendants' situation. As reflected by

the ORB decisions, there is evidence that Plaintiff has harassed a Ubisoft employee, and further,

Plaintiff's allegation that Ubisoft Divertissements CEO, Yaniss Mallat, might be a Canadian spy,

*see* Opp'n at 2-3, is arguably speculative or fanciful.[9] But even under these circumstances, the

Court is not prepared—at least not at this juncture—to issue sanctions, specifically the sanction

that Defendants seem most invested in obtaining—*i.e.*, a declaration that Plaintiff is a vexatious

litigant—for the following reasons.

First, declaring a party a vexatious litigant is a sanction that requires a rigorous showing

and is rarely imposed. *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir.

2007) (noting that district courts have the inherent power to enter pre-filing orders against

vexatious litigants under the All Writs Act but that such pre-filing measures should rarely be used,

as they are an "extreme remedy" that can "tread on a litigant's due process right of access to the

courts"). Second, declaration of a party as a vexatious litigant often turns on the number and the

content of the cases filed by the party. To enter pre-filing orders against vexatious litigants, (1)

---

[9] Defendants have also alleged in their motion to strike that Plaintiff has made defamatory remarks and have attempted to disrupt Defendants' contractual relations. (*See* Docket No. 67 at 7).

the litigant must be given notice and chance to be heard before the order is entered; (2) the district court must compile "an adequate record for review, including a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed; (3) The court must make substantive findings that the litigant's filings are frivolous or harassing; and (4) the pre-filing order may not be overly broad, and must be "narrowly tailored to closely fit the specific vice encountered." *De Long*, 912 F.2d 1144, 1147-48 (9th Cir. 1990). With respect to the third element, the district court must look at "both the number and content of the filings as indicia" of the frivolousness of the litigant's claims." *Id.* at 1148. (stating that "both the number and content of the filings [are] indicia of the frivolousness of the litigant's claims"); *see also Molski*, 500 F.3d at 1059 (noting that a "plaintiff's claims must not only be numerous, but also be patently without merit").

Here, apart from the present case, Defendants have identified three cases that Plaintiff has initiated against a Ubisoft entity or employee—all of which were filed in state court. Plaintiff's total of four lawsuits is fewer than the number of lawsuits often found in cases where parties were declared vexatious. *Cf. De Long*, 912 F.2d at 1148 (citing cases where over 35 related complaints were filed; over 50 frivolous cases filed; and over 600 complaints filed). Furthermore, many of Plaintiff's allegations in the present case rely on a different set of operative facts compared to the other lawsuits he has filed. This is relevant to the requirement that a pre-filing order be "narrowly tailored to closely fit the specific vice encountered." *De Long*, 912 F.2d at 1148. In making a vexatious finding, courts have limited pre-filing orders to subject matter or claims that have already been litigated. *Id.* (citing a case where "plaintiff was prevented from relitigating issues pertaining to his discharge or issues which he raised in previous cases specifically named;" plaintiff was prevented from "relitigating issues decided in two cases."). *Id. See Huggins v. Hynes*, 117 F. App'x 517, 518 (9th Cir. 2004) (finding that the district court properly exercised its discretion in declaring the defendant a vexatious litigant in part because the defendant was "repeatedly relitigating the same controversy and repeatedly filing frivolous motions and pleadings."). While two of Plaintiff's cases in state court appear to concern alleged harassment by Mr. Mallat and were unsuccessful, *see* Docket Nos. 39-3 and 67-2, the bulk of Plaintiff's case

before this Court is about different conduct—in essence, infringement on Plaintiff's intellectual property or other property rights. While alleged harassment by Mr. Mallat appears fanciful and the stalking and intentional infliction of emotional distress claims are being dismissed with prejudice, the same cannot be said, at least not at this juncture, of the infringement claims.

Lastly, Defendants' request that the Court require a "pre-filing review of *all* of his pro se filings against the Ubisoft Defendants or their employees" relating to the allegations in Plaintiff's amended complaint, Docket No. 38 (Mot. at 24) (emphasis added), seems overbroad. Pre-filing orders must be "narrowly tailored to closely fit the specific vice encountered," which is essential to "prevent infringement on the litigator's right of access to the courts." *De Long*, 912 F.2d at 1148. Because it is unclear at this juncture whether amendment would be futile, the Court finds that Defendants' request would broadly infringe on Plaintiff's access to the courts.

## C.    Proposed Order for a Preliminary Injunction

For the foregoing reasons, the Court grants the motion to dismiss and denies the motion for sanctions. The Court now turns to a recent filing from Plaintiff—his proposed order for a preliminary injunction. Because Plaintiff is proceeding *pro se*, the Court will liberally construe the proposed order and, in the interest of justice and for the purposes of efficacy, deem Plaintiff's proposed order as a motion. Defendants' motion to strike, which addresses Plaintiff's request for preliminary injunction, will be construed as an opposition. Plaintiff's request for a preliminary injunction is denied for the following reasons.

First, Plaintiff has not included an accompanying memorandum of points and authorities. Indeed, Plaintiff has failed to provide any substantive evidence—let alone argument—to support the issuance of a preliminary injunction. The only evidence he has proffered is documentation indicating he has some Canadian copyrights and that the U.S. Copyright Office will be issuing him a copyright for, presumably, some part of iOS Venture Apps. He has not shown a likelihood of prevailing on the merits. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) (stating that "a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Second, the

Court notes that the specific relief sought by Plaintiff is problematic in that it largely consists of monetary damages. Monetary damages typically do not constitute irreparable injury, which is required for preliminary injunctive relief. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1202 (9th Cir. 1980) (stating that the basis of injunctive relief in the federal courts is "irreparable harm" and that monetary injury—such as lost revenues—are not considered "irreparable" but rather can be compensated by a damage award); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) (finding that temporary loss of income and "injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to constitute irreparable injury in obtaining a preliminary injunction). Lastly, the relief sought by Plaintiff seeks to alter the status quo which is contrary to "[t]he purpose of a preliminary injunction [which] is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (noting that "[a] mandatory injunction orders a responsible party to take action" and that, because it "goes well beyond simply maintaining the status quo [p]endente lite[,] [it] is particularly disfavored"; "[i]n general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages") (internal quotation marks omitted).

### III.    CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss. Plaintiff may not seek to refile amended claims for stalking or intentional infliction of emotional distress. The Court denies Defendants' motion for sanctions. To the extent Plaintiff has moved for a preliminary injunction, that request is also denied.

This order disposes of Docket Nos. 38 and 41.

**IT IS SO ORDERED**.

Dated: July 13, 2018

_____
EDWARD M. CHEN
United States District Judge

23